Entered: January 18th, 2017
Signed: January 17th, 2017



**S. MARTIN TEEL, JR.**
**U.S. BANKRUPTCY JUDGE**
SITTING BY DESIGNATION

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| HENRY ALLEN ZINN, | : | Case No. 13-14270-LSS |
| | : | (Chapter 13) |
| Debtor. | : | |
| ———————————————— | : | |
| HENRY ALLEN ZINN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Adversary Proceeding |
| | : | No. 13-00708-LSS |
| MORTGAGE LENDER OF AMERICA | : | |
| AND COMPANY, INC., *et al.*, | : | Not for publication in West's |
| | : | Bankruptcy Reporter. |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### MEMORANDUM DECISION RE FLAGSTAR'S MOTION TO DISMISS

Flagstar Bank, FSB ("Flagstar"), one of the defendants, has filed a motion to dismiss the plaintiff's Third Amended Complaint.

FACTS

The Third Amended Complaint sets forth the following facts, which, for purposes of the motion to dismiss, are accepted as true (to the extent not merely conclusory allegations instead of well-pled facts).  In 2002 the plaintiff, Henry Zinn, and his son, Joseph Zinn, purchased a 46.7 acre parcel of property, the "Original Parcel," in Montgomery County, Maryland.[1]  Later, Joseph and his wife, Billie Joe Zinn, acquired an adjoining, unimproved parcel of 26.7 acres of real property, the "Additional Parcel," located in the same county.  In 2003, Henry, Joseph, and Billie Joe obtained construction loans from Severn Savings Bank to construct two homes on the Original Parcel, one for Henry and one for Joseph and Billie Joe.  The three Zinns all served as the obligors for both loans and each loan was secured by deeds of trust on both parcels.  The loans, for $650,000 and $360,000, totaled $1,010,000.  The Zinns constructed a residence for Henry and a residence for Joseph and Billie Joe on the Original Parcel.

In 2008, Henry, Joseph and Billie Joe endeavored to take out refinancing loans so that Henry would be the sole owner of his own home and a surrounding five-acre tract of land ("Parcel 1"),

_____

[1]  It appears that after the purchase, part of the Original Parcel was taken by condemnation, and the remainder of the Original Parcel owned by Henry and Joseph shrunk to 41.65 acres. However, for purposes of this decision I will still refer to the part they continued to own as the Original Parcel.

to be used as the collateral for a refinancing loan to him, and Joseph and Billie Joe would be the joint owners of their own home and a surrounding five-acre tract of land ("Parcel 2"), to be used as the collateral for a refinancing loan to them.

The Zinns engaged Mortgage Lenders of America and Company, Inc. ("Mortgage Lenders") for the purpose of creating the new loans. Representatives of Mortgage Lenders indicated that they could create two separate mortgage loans, one to Henry secured by Parcel 1, the five-acre parcel surrounding his home, and one to Joseph and Billie Joe secured by Parcel 2, the five-acre parcel surrounding their home. A land surveyor prepared metes and bounds descriptions of Parcel 1 and Parcel 2, as well as a plat drawing. Mortgage Lenders obtained appraisals of each of the five-acre parcels. Flagstar was the underwriter for a $401,000 loan that was to be made to Henry. Mortgage Lenders assured the Zinns that the transactions would go off as represented, and in reliance on Mortgage Lenders' representations, the Zinns proceeded with the transactions. The refinancing transactions did result in satisfying the debts owed to Severn Savings Bank; part of the proceeds of the $401,000 refinancing loan to Henry was used to pay off the $356,298.05 balance of the $360,000 construction loan, and part of the proceeds of the refinancing loan to Joseph and Billie Joe was used to pay off the balance of

the $650,000 construction loan.  However, the transactions did not otherwise go off as envisioned by the Zinns.

First, as part of the transactions, the Zinns executed two quit claim deeds:

> (1) one (executed on February 27, 2008, and recorded on August 8, 2008) conveyed Henry's interest in the Additional Parcel to Joseph and Billie Joe, thus making Joseph and Billie Joe the joint owners of the Additional Parcel; and

> (2) one (executed on February 27, 2008, and recorded more than a year later, on October 20, 2009) conveyed Joseph's interest in the Original Parcel to Henry, making Henry the sole owner of the Original Parcel.

As a result the Original Parcel (including the two homes that sit on the Original Parcel, *i.e.*, both Henry's home and Joseph's and Billie Joe's home) is now solely owned by Henry, and the unimproved Additional Parcel is now owned jointly by Joseph and Billie Joe.

Second, the deeds of trust executed pursuant to the transactions were not as envisioned:

> (1) for the loan to Henry of $401,000, the collateral for the deed of trust executed by Henry on February 27, 2008, and recorded on October 20, 2009 (the "*Henry Deed of Trust*"), was the Additional Parcel, instead of Parcel 1 of the Original Parcel; and

4

(2) for the loan to Joseph and Billie Joe of $856,000,

the collateral for the deed of trust, executed by Joseph and

Billie Joe on February 27, 2008, and recorded on August 8,

2008 (the "*Joseph and Billie Joe Deed of Trust*"), was also

the Additional Parcel, instead of Parcel 2 of the Original

Parcel.

As a result, the Original Parcel was left unencumbered, whereas the Additional Parcel, which the Zinns had not discussed or contemplated to serve as collateral for either loan,[2] is now encumbered for repayment of both loans.

Henry maintains that he, Joseph, and Billie Joe executed the loan documents on the basis of the explicit understanding reached in numerous conversations with Mortgage Lenders, as confirmed by the loan origination documents, that the security for the loans would be the respective five-acre parcels. Henry asserts that they would not have executed the documents had they been aware of the need to include either the entire Original Parcel or the Additional Parcel as collateral for the loans. The Zinns lay blame on Flagstar, pointing to a Purchase Commitment Letter of February 25, 2008, listing the status of Henry's loan as Final

---

[2] The *Henry Deed of Trust* erroneously represented that the collateral listed (the Additional Parcel) was the principal residence of Henry. The *Joseph and Billie Joe Deed of Trust* erroneously represented that the collateral listed (the Additional Parcel) was the principal residence of Joseph and Billie Joe.

Approval Clear to Close, in which Flagstar indicated that "[t]he title to the property located at the above address, given to secure this loan and all other legal matters pertaining to this transaction must meet with the approval of FLAGSTAR BANK."[3]

In October 2008, Henry retained an attorney, Susan S. Jamison. On October 7, 2008 (before the *Henry Deed of Trust* was recorded), Jamison wrote to Mortgage Lenders, Flagstar, and other entities involved in the refinancing transactions and recited what had gone wrong in the transactions, including, as pertinent to Henry, that the *Henry Deed of Trust* (which Jamison noted may not yet have been recorded at that time) had erroneously designated the Additional Parcel as collateral for the $401,000 loan to Henry, and that the two quitclaim deeds were inconsistent with the intentions of Henry, Joseph, and Billie Joe.

When the *Henry Deed of Trust* was filed on October 20, 2009, Flagstar was the loan servicer for Henry's $401,000 loan and was accepting payments from Henry. Further missteps followed regarding the *Henry Deed of Trust*:

---

[3] It is unclear whether the "Property Address" listed for the collateral related to the Original Parcel, the Additional Parcel, or both. The appraisals of the two homes on the Original Parcel, prepared incident to the Zinns' seeking the refinancing loans used one street address for Henry's home and another street address for Joseph's and Bille's home. In any event, Henry assumed that the papers he executed related to the loans as the Zinns had envisioned them.

(1) The *Henry Deed of Trust* was filed on October 20, 2009, even though Flagstar had been notified by then that Henry had not truly offered the property identified as collateral in the *Henry Deed of Trust* (the Additional Parcel) as collateral to secure the refinancing loan to him.

(2) On or about August 23, 2011, representatives of Flagstar filed in the Circuit Court of Montgomery County, Maryland an Affidavit of Default and Notice of Intent to Foreclose regarding the loan to Henry, attesting to the *Henry Deed of Trust*.

(3) On or about August 25, 2011, representatives of Flagstar filed in the Circuit Court of Montgomery County, Maryland an Affidavit Statement of Debt and Right to Foreclose regarding the loan to Henry, attesting to the *Henry Deed of Trust*.

The two Affidavits were drafted with knowledge that the collateral identified in the *Henry Deed of Trust* (the Additional Parcel) was not offered by Henry as collateral for Henry's refinancing loan. The Zinns' attorney had advised Flagstar of that problem in 2008. Moreover, representatives from Flagstar downloaded the loan origination file, which supported Henry's account of what the Zinns had intended and expected, on September 21, 2011.

On or about February 2, 2012, an altered version of the *Henry Deed of Trust* (the "*Altered Henry Deed of Trust*") was inserted into the land records of Montgomery County, Maryland. This altered deed of trust is referred to by Henry as the "Fraudulent DOT." It states that "the document is being re-recorded to correct the legal description which was incorrectly stated previously." The *Altered Henry Deed of Trust* amended the *Henry Deed of Trust* by inserting as the second page the legal description of the entire Original Parcel as collateral, while also still attaching the description of the Additional Parcel originally attached to the *Henry Deed of Trust*. The *Altered Henry Deed of Trust* thus constitutes a lien against both the Original Parcel and the Additional Parcel. As in the case of the Additional Parcel, none of the Zinns ever offered the entire Original Parcel as collateral for either of the loans, and none of the parties had ever discussed the possibility of the entire Original Parcel being offered as collateral.

On February 23, 2012, a Vice President of Flagstar, acting on behalf of Mortgage Lenders, executed a Transfer and Assignment of Security Instrument to convey to Flagstar the *Henry Deed of Trust*, and the document was recorded on March 8, 2012. There is no indication that prior to February 23, 2012, Flagstar had acted as a holder of the promissory note for the $401,000 refinancing loan to Henry.

On March 8, 2012, an Appointment of Substitute Trustees was filed in the land records of Montgomery County, Maryland. It purports to have been executed by an Assistant Vice President of Flagstar and to have been prepared under the supervision of Cohn, Goldberg and Deutsch, LLC, another defendant in this case. On its first page, the Appointment of Substitute Trustees represents that:

> on February 27, 2008, Henry A. Zinn executed a Deed of Trust, which is recorded in the Land Records Office of Montgomery County at Liber No. 38217, Folio 104 [which is the *Henry Deed of Trust* recorded October 20, 2009], and re-recorded at Liber No. 43207, Folio 216 [which is the *Altered Henry Deed of Trust* that was recorded February 2, 2012], and therein, granted and conveyed the property known as:
>
> See attached Exhibit A
> Address: 23706 River Road, Dickerson, MD 20842
> Tax ID No.: 03-00036322

The attached Exhibit A referenced in that document describes the Additional Parcel.[4]

On or about March 5, 2012, the trustees under the *Altered Henry Deed of Trust* commenced in the Circuit Court of Montgomery County, Maryland a foreclosure action on behalf of Flagstar against Henry. During mediation in September 2012,

---

[4] The document bears on its second page a notarized signature of August 16, 2011. The document was recorded in the Montgomery County, Maryland land records on March 8, 2012. The first page of the Appointment of Substitute Trustees could not have been in existence when the document was executed (on the second page) in August 2011 because it refers to the *Altered Henry Deed of Trust*'s Liber and Folio number in the land records, a recording which did not occur until February 2, 2012.

representatives of Flagstar and Flagstar's attorney's withheld material information and conspired to withhold material information from the Administrative Law Judge who was serving as a mediator.

On October 12, 2012, attorneys for Henry sent a letter to the law firm that was acting on behalf of Flagstar in the foreclosure sale pursuant to the *Altered Henry Deed of Trust*. That letter advised Flagstar's counsel of the "obvious fraud" that would occur if the foreclosure sale proceeded. The foreclosure did not proceed.

On November 13, 2012, Mortgage Electronic Registration Systems, Inc., as nominee for Mortgage Lenders, executed a Transfer and Assignment of Security Instrument (recorded in the land records on November 19, 2012), transferring to Flagstar the *Henry Deed of Trust* and the *Altered Henry Deed of Trust*, and attaching a legal description of the Original Parcel. On November 13, 2012, a Banking Officer of Flagstar executed an Amended Appointment of Substitute Trustee (recorded in the land records on November 19, 2012), representing on its face that Henry had executed both the *Henry Deed of Trust* and the *Altered Henry Deed of Trust*, and thereby conveyed the Original Parcel as collateral for the refinancing loan.

In February 2013, Flagstar and Cohn, Goldberg and Deutsch, LLC, acting in concert, used the *Altered Henry Deed of Trust* as a

basis for a notice of a foreclosure sale set for March 13, 2013.

On March 12, 2013, Henry filed his petition commencing a chapter

13 case to obtain the protection of the automatic stay.

Flagstar, through its attorneys, filed a proof of claim

identifying the *Henry Deed of Trust* with the property description

of the Additional Parcel as security for the loan to Henry. At

that time, Flagstar and its attorneys knew that neither the

Additional Parcel listed in the *Henry Deed of Trust* and *Altered*

*Henry Deed of Trust* nor the Original Parcel also listed in the

*Altered Henry Deed of Trust* had been truly offered by Henry as

collateral for the loan.

 On November 20, 2013, Henry commenced this adversary

proceeding against Flagstar and other defendants. On November

27, 2013, a Vice President of Flagstar executed an Assignment of

Deed of Trust (recorded in the Montgomery County, Maryland land

records on January 13, 2014), conveying to Green Tree Servicing,

LLC ("Green Tree") Flagstar's rights under the *Henry Deed of*

*Trust*. On January 20, 2014, a Notice of Assignment of Claim

Other Than for Security was filed in the bankruptcy case on

behalf of Green Tree, evidencing the transfer of Flagstar's filed

claim to Green Tree.

## THE DECLARATORY JUDGMENT COUNT

In Count I, Henry seeks a judgment declaring the *Henry Deed of Trust* and the *Altered Henry Deed of Trust* to be invalid, and an award of attorney's fees and costs related to pursuing that count.  Flagstar correctly contends that its transfers of the deeds of trust to Green Tree require that this count be dismissed as to Flagstar.  However, in addition to seeking declaratory judgment, Henry seeks damages against Flagstar based on the invalid deeds of trust elsewhere in the Third Amended Complaint. If those claims survive the motion to dismiss, it may be necessary to determine, as to Flagstar, the validity or invalidity of the deeds of trust.  Accordingly, Flagstar's motion to dismiss the declaratory judgment claim of Count I will be granted but without prejudice to Henry obtaining a determination as to the validity or invalidity of the deeds of trust incident to pursuing his claims for damages.

Henry's request for attorney's fees for pursuing Count I must also be dismissed, as he has not pled any facts establishing an exception to the American rule under which parties ordinarily bear their own attorney's fees.  That dismissal, however, will not preclude Henry's ability to recover attorney's fees as an element of damages pursuant to any viable claim under other counts.

## THE FRAUD COUNT

In Count II, Henry seeks damages for fraud. For the following reasons, Count II will be dismissed.

A. Statute of Limitations

Flagstar contends that any fraud claim Henry had relating to the February 27, 2008 closing of the refinancing transactions (including the allegedly fraudulent insertion of the legal description of the Additional Parcel into the original $401,000.00 *Henry Deed of Trust*) is barred by the three-year statute of limitations prescribed by MD Code Ann., Cts. & Jud. Proc. § 5-101. By October 7, 2008, Henry's attorney had written to Flagstar and other defendants in this case, informing them that the collateral for both the loan to Henry and the loan to Joseph and Billie Joe had erroneously been made the Additonal Parcel, and taking issue with the ownership transfers resulting from the execution of the two quitclaim deeds. Accordingly, by October 7, 2008, Henry was aware of the errors that had occurred in the course of the February 2008 refinancing transactions.

The *Henry Deed of Trust*, with a legal description for the Additional Parcel as collateral attached, was recorded on October 20, 2009. Yet Henry did not file his original Complaint until November, 2013, more than three years after he knew or should have known about the collateral allegedly fraudulently obtained

through the February 27, 2008 refinancing transactions.  The
portion of Henry's fraud claim relating to the documents executed
pursuant to the Feburary 27, 2008, closing of the refinancing
transactions is therefore barred by the statute of limitations.
As discussed in a decision of this date addressing similar claims
of Joseph and Billie Joe against CitiMortgage and U.S. Bank (who
held or hold the claim for the refinancing loan to Joseph and
Billie Joe), the "continuing harm doctrine" does not apply to
enlarge the statute of limitations period as there was a single
harm occurring in 2008 even if that harm had continuing effects
later.

However, the invalid *Henry Deed of Trust* did not become a
valid deed of trust as a result of Henry's failure timely to sue
regarding any wrongful acts Flagstar committed in 2008.[5]  Plainly
Henry is not barred by the statute of limitations from recovering
damages based on any subsequent wrongful acts that occurred
within the three years preceding the filing of his original

---

[5]  Although the statute of limitations bars a claim for
damages based on wrongful acts in the February 2008 refinancing
transactions, Flagstar's motion has not raised the statute of
limitations as a defense to subsequent wrongful acts.  On October
20, 2009, the *Henry Deed of Trust* was recorded in the Montgomery
County land records.  There is no specific allegation that
Flagstar filed the *Henry Deed of Trust*.  If there were, a claim
for damages based on that act of making the filing of October 20,
2009, would appear to be barred by the statute of limitations.
However, Flagstar's motion does not specifically raise that
defense as to that filing.  Henry would be entitled to an
opportunity to respond to that defense if it were raised.

complaint. From 2011 through 2013, during the three years preceding Henry's filing of the original Complaint in November 2013, Flagstar continued to treat the invalid *Henry Deed of Trust* as though it was a valid deed of trust. During the same three years, the *Altered Henry Deed of Trust* (which came into existence in 2012) was filed and Flagstar treated it as a valid deed of trust. The statute of limitations does not bar any claims based on those acts that occurred during the three years preceding Henry's filing of the original complaint in this adversary proceeding on November 20, 2013.

B. Requirements of Misrepresentation and Reliance

Flagstar contends that because Count II contains no specific allegations of concealment or misrepresentation or of reasonable reliance, Henry has not pled a fraud claim. Any fraud claim based on the acts occurring in 2008 is barred by the statute of limitations. There is no suggestion in the complaint that any of Flagstar's subsequent acts involved a misrepresentation or concealment upon which Henry relied. Accordingly, no viable fraud claim based on misrepresentation or concealment upon which Henry relied has been stated. Nor does a negligent misrepresentation claim lie when there was no reliance by the plaintiff. *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 762 A.2d 582, 588 (Md. 2000).

"Actual fraud" can exist without a misrepresentation, as in the case of a fraudulent conveyance. *Husky Int'l Electronics, Inc. v. Ritz*, 136 S.Ct. 1581, 1586 (2016) ("[A]nything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'"). However, as explained in *Husky*, fraud connotes that the plaintiff was deprived of something through fraud. Here, Flagstar obtained no interest in property by reason of attempting to enforce the deeds of trust.

Nevertheless, Henry has pled in Count III that Flagstar engaged in attempted foreclosures pursuant to the invalid deeds of trust after Flagstar was put on notice that the deeds of trust were invalid. Even if a plaintiff mislabels the nature of a claim in his complaint, the claim survives so long as it states a claim upon which relief can be granted. At first blush, it appeared that Henry had a tort action against Flagstar for wrongful attempted foreclosure. However, most courts do not allow a cause of action for a wrongful attempted foreclosure. *See Houpt v. Wells Fargo Bank, Nat. Ass'n*, 370 P.3d 384, 393 (Idaho 2016) and decisions cited therein.[6]

---

[6] *See also Santos v. Countrywide Home Loans*, No. 2:09-02642 WBS DAD, 2009 WL 3756337, at *3 (E.D. Cal. Nov. 6, 2009) (applying California law); *Raines v. GMAC Mortg. Co.*, No. 3:09-CV-00477-J-25HTS, 2009 WL 4715969, at *2 (M.D. Fla. Dec. 10, 2009) (applying Florida law); Dale Joseph Gilsinger, *Action for Damages for Attempted Wrongful Foreclosure*, 104 A.L.R.6th 485, at § 2 (2015) (explaining the rationales for not allowing an action for attempted wrongful foreclosure).

The issue of whether an action may be brought for attempted wrongful foreclosure appears to arise only in the context of nonjudicial sales.[7]  In Maryland, a foreclosure sale under a deed of trust requires a court action, governed by the Maryland Rules and § 7-105, *et seq.*, of the Real Property Article of the Maryland Code.  A foreclosure sale in Maryland is nonjudicial in the limited sense that the trustee under the deed of trust, rather than an officer appointed by the court, conducts the sale.  *See* Md. Rule 14-214.

The rules governing procedure for foreclosure sale actions are extensive, and include that the defaulting borrower may file "in the action a motion to stay the sale of the property and dismiss the foreclosure action.'"  Md. Rule 14-211(a)(1). Moreover, the sale is subject to ratification and audit procedures.  Md. Rules 14-215 & 14-305.  Importantly, just as in any other civil action, the court in a foreclosure sale action may, pursuant to Md. Rule 1-342(a), impose against a party who maintains a civil action in bad faith or without substantial justification, or against that party's attorney, a sanction of

---

[7]  In *Reese v. First Mo. Bank & Trust Co.*, the Supreme Court of Missouri noted that of the twenty-nine states that conduct nonjudicial foreclosure sales only Georgia, Massachusetts, and North Carolina have a cause of action for attempted wrongful foreclosure.  736 S.W.2d 371, 373 & n.5 (Mo. 1987) (en banc) (citing *Worley v. Worley*, 199 S.E. 82 (N.C. 1938); *Sale City Peanut & Milling Co., Inc. v. Planters & Citizens Bank*, 130 S.E.2d 518 (Ga. Ct. App. 1963); *Morse v. Mut. Fed. Sav. & Loan Ass'n,* 536 F.Supp. 1271, 1280 (D. Mass. 1982))

reimbursing the adverse party for "the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it." That was the remedy to which Henry could have resorted. In that light, I conclude that there is no independent tort cause of action in Maryland for wrongful attempted foreclosure. As such, Henry's fraud claim against Flagstar cannot survive as a claim for wrongful attempted foreclosure and must be dismissed.

C.    The Filing of the *Altered Henry Deed of Trust* and the Requirement of Pleading Fraud With Particularity

In his complaint, Henry alleges that Flagstar pursued the foreclosure proceeding under the *Altered Henry Deed of Trust*, but he does not identify Flagstar as having filed the instrument itself. Even if the filing of the *Altered Henry Deed of Trust* could be considered an act of fraud (which it cannot, because Flagstar obtained no property from Henry as a result of filing the instrument), Flagstar's role in the alleged fraud was not pled with the requisite particularity; under Fed. R. Civ. P. 9(b), in alleging fraud, "knowledge . . . may be alleged generally" but "a party must state with particularity the circumstances constituting fraud[.]"

Henry does not allege in his complaint that Flagstar, as loan servicer, played a role in the preparation and recording of the *Altered Henry Deed of Trust*. He alleges that Flagstar and Cohn, Goldberg & Deutsch, LLC (as well as Green Tree, which

18

became Flagstar's assignee after the commencement of this adversary proceeding) knew that Henry never intended to offer the Original Parcel as security for the loan and that these defendants "independently or acting in concert" caused the Original Parcel to be inserted into the *Altered Henry Deed of Trust* and thereafter caused a foreclosure action to be pursued.

This is too vague to satisfy the Rule 9(b) particularity requirement. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (holding that RICO allegations that defendants were "'acting in concert with [two defendants]'" and "'knew that [the two defendants] were making . . . false statements'" were insufficient as a matter of law to satisfy Rule 9(b)); *S.E.C. v. U.S. Envtl., Inc.*, 82 F.Supp.2d 237, 241 (S.D.N.Y. 2000) (stating that a plaintiff cannot satisfy Rule 9(b) "by making vague allegations about the defendants as a unit"). Accordingly, for this additional reason the part of the fraud claim relating to the preparation and recording of the *Altered Henry Deed of Trust* must be dismissed.

D.  The Defense of Equitable Subrogation

Flagstar contends that it was entitled to a lien on both the Additional Parcel and the Original Parcel based on equitable subrogation, such that there was no wrongful foreclosure attempt, because the proceeds of the refinancing loans were used to pay off the Severn Savings Bank loans, for which both parcels served

as collateral.  Specifically, the HUD-1 closing statement for the $401,000.00 loan to Henry shows that $356,298.05 of the proceeds of that loan were used for the payoff of the $360,000.00 Severn Savings Bank construction loan that was secured by both the Original Parcel and the Additional Parcel.  To the extent that equitable subrogation applied, there was no need for Flagstar to first obtain a declaration that equitable subrogation applied before pursuing foreclosure actions.  *See G.E. Capital Mortgage Services, Inc. v. Levenson*, 657 A.2d 1170 (1995).[8]

Henry contends that equitable subrogation does not apply because not all of the collateral for the Severn Savings Bank loans (both the Original Parcel and the Additional Parcel) was intended to be collateral for the refinancing loans.  As to the Additional Parcel, the subject of the *Henry Deed of Trust*, Henry never intended to post it as collateral for the $401,000 refinancing loan.  As to the Original Parcel, Henry contends that he intended to post only a five-acre portion of it as collateral for the $401,000 loan.  He notes that in *Levenson*, cited by

---

[8]  Flagstar did not limit its right of enforcement to the $356,298.05 obligation owed to Severn Savings Bank but asserted instead that its entire $401,000 loan to Henry was secured by the Additional Parcel (in the case of the attempted foreclosure under the *Henry Deed of Trust*) and the Original Parcel (in the case of the attempted foreclosure under the and *Altered Henry Deed of Trust*).  However, assertion of a secured claim amount beyond the amount that equitable subrogation would permit could be addressed in the foreclosure sale auditor process required by Maryland foreclosure law.  *Id.* at 1178.

Flagstar in its motion to dismiss, the Court of Appeals of

Maryland quoted from G.E. Osborne, *Handbook on the Law of*

*Mortgages* § 282, at 570 (2d ed. 1970) as follows:

> Where a lender has advanced money for the purpose of
> discharging a prior encumbrance in reliance upon
> obtaining security *equivalent to the discharged lien*, and
> his money is so used, the majority and preferable rule is
> that if he did so in ignorance of junior liens or other
> interests he will be subrogated to the prior lien.

*Levenson*, 338 Md. at 231-32 (emphasis added).

In this case, Henry contends, none of the parties

contemplated that the security for the refinancing loan to Henry

would be *equivalent* to that of the security for the loans from

Severn Savings Bank, the prior lienholder. Rather, he contends,

it was intended that Mortgage Lenders would have only a lien on

Parcel 1, a five-acre lot on the Original Parcel surrounding

Henry's home, which would belong only to Henry after execution of

the requisite quit claim deeds. Henry did not agree that

Flagstar's predecessor-in-interest (Mortgage Lenders) would have

a lien on the entirety of the Original Parcel, or a lien on

Henry's interest in the Additional Parcel.[9]

However, equitable subrogation is not limited to the

situation described in *Levenson*. *See Noor v. Centreville Bank*,

996 A.2d 928, 938 (Md. Ct. Spec. App. 2010). The *Noor* court

---

[9] So long as Henry has no interest in the Additional
Parcel, there is an issue regarding whether he has standing to
complain about attempted foreclosure against the Additional
Parcel.

explained that the doctrine "is an aspect of the broader equitable principle of avoiding unjust enrichment," and that the Court of Appeals of Maryland has explained repeatedly,[10] in each instance quoting from 10 S. Williston, *A Treatise on the Law of Contracts* § 1285, at 845 (W. Jaeger ed., 3d ed. 1967), that:

> The object of subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one, who, in justice, equity, and good conscience, should pay it. It is an appropriate means of preventing unjust enrichment.

*Id.* at 937-38.

Flagstar invokes equitable subrogation against Henry (and Joseph and Billie Joe) on the basis that it paid Severn Bank's outstanding lien claim of $356,298.05, and that the doctrine applies even if the parties, as alleged by Henry, had not intended for Henry's refinancing loan to be secured by any property other than the five acres surrounding Henry's home. If, incident to the claim for a declaratory judgment, the court determines that the doctrine of equitable subrogation applies, Flagstar was free under *Levenson* to enforce the Severn Bank liens under that doctrine without first obtaining a judicial decree that equitable subrogation applied. In that event, no wrongful foreclosure attempt occurred.

---

[10] *See Bachmann v. Glazer*, 559 A.2d 365, 368 (Md. 1989); *Riemer v. Columbia Medical*, 747 A.2d 677, 682 (Md. 2000); *Podgurski v. OneBeacon Ins. Co.*, 821 A.2d 400, 405 (Md. 2003); *Hill v. Cross Country*, 936 A.2d 343, 362 (Md. 2007).

However, equitable subrogation is a claim in equity, and is subject to equitable defenses. *See Noor*, 996 A.2d at 937 ("[A]ny 'right' to equitable relief is subject to counter equities that may be relevant." (citations omitted)). In filing the Third Amended Complaint, Henry was not required to anticipate that Flagstar would rely on the doctrine of equitable subrogation, and was not required to plead any defenses he has to the application of the doctrine. Moreover, the issuance of a decree of equitable subrogation is a discretionary decision, and the court should have a full exploration of the facts before deciding whether to exercise that discretion. *See State Comm'n on Human Relations v. Talbot Cty. Det. Ctr.*, 803 A.2d 527, 532 (2002) ("[T]rial courts, sitting as courts of equity, are granted broad discretionary authority to issue equitable relief." (citations omitted)). Thus, if Henry's fraud claim could otherwise survive, the doctrine of equitable subrogation would not justify the dismissal of the fraud count.

Nevertheless, Flagstar's invocation of the doctrine of equitable subrogation does not appear to be a frivolous assertion of the doctrine, and Flagstar's attempt to foreclose pursuant to that doctrine, an attempt that was subject to judicial scrutiny in the foreclosure actions, would not likely have been the basis, under Md. Rule 1-342(a), for a claim for damages for bad faith in

the foreclosure actions; it is in those actions that any such

damages under Md. Rule 1-342(a) should be pursued.

D.   Slander of Title

In Count XII, Henry has asserted against defendants *other*

*than Flagstar* a slander of title claim based on the recording of

the quitclaim deeds.  He has not argued that Count II, despite

being labeled a fraud claim, should survive based on its stating

a slander of title claim regarding the recording of the *Altered*

*Henry Deed of Trust*.  Regardless, Count II does not adequately

plead a slander of title claim.  In Maryland, a cause of action

for slander of title "may consist of the publication of matter

derogatory to the plaintiff's title to his property . . . of a

kind calculated to prevent others from dealing with him, or

otherwise to interfere with his relations with others to his

disadvantage."  *Beane v. McMullen*, 291 A.2d 37, 49 (Md. 1972)

(quoting Prosser, *Law of Torts* 919–20 (4th ed. 1971)).  "[T]he

plaintiff must establish [the filing's] falsity as a part of his

cause of action"[11] and in all cases the plaintiff must establish

that the plaintiff has "suffered special damage."  *Id.*  Henry has

not adequately identified Flagstar as having filed the *Altered*

*Henry Deed of Trust*, and has not pled how the *Altered Henry Deed*

---

[11]   If the doctrine of equitable subrogation applies, there
was no falsity, and if the tort of slander of title requires an
intention wrongfully to interfere with title, a good faith belief
that equitable subrogation applies might be a defense.

*of Trust* caused others not to deal with him, interfered with his relations with others, or caused special damages. Accordingly, Count II would have to be dismissed even it were re-labeled a slander of title claim. *See Powell v. Countrywide Bank*, No. PX-16-1201, 2016 WL 5815884, at *7 (D. Md. Oct. 4, 2016).

IV

STATUTORY MORTGAGE FRAUD CLAIMS

Henry asserts in Count III statutory claims for mortgage fraud under Maryland's Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop., §§ 7-401 *et seq*. These claims must be dismissed.

In relevant part, Md. Code Ann., Real Prop. § 7-401(d) provides that "mortgage fraud"

> means any action by a person made with the intent to defraud that involves:
> . . .
> (6) Filing or causing to be filed in the land records in the county where a residential real property is located, any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.

Henry points to the filing of the two quitclaim deeds, the *Henry Deed of Trust*, the *Altered Henry Deed of Trust*, and five other documents as constituting acts of mortgage fraud. No viable mortgage fraud claim has been stated as to any of those filings even if Henry had identified Flagstar as the entity that filed each of them.

As in the case of Count II (Fraud), any claims for mortgage fraud based on wrongful acts occurring in 2008, including the filing of the quitclaim deed that divested Henry of any interest in the Additional Parcel, are barred by the statute of limitations.[12]  As to subsequent acts, Flagstar contends that Henry has not pled mortgage fraud with particularity, as required by Fed. R. Civ. P. 9(b).  Flagstar questions whether Henry's allegations adequately plead that Flagstar was engaged in the allegedly wrongful filings, and contends that the complaint "fails to plead knowledge of falsity, intent to defraud, reliance or damages."  Even disregarding the first issue of whether Flagstar's involvement has been pled with particularity, no statutory mortgage fraud claim has been adequately pled.

In order to state a mortgage fraud claim under the MMFPA, a plaintiff must plead the elements of a common law fraud claim. *Galante v. Ocwen Loan Servicing LLC*, No. ELH-13-1939, 2014 WL 3616354, at *28 (D. Md. July 18, 2014).  To state a common law claim of fraud, the misrepresentation alleged must have been made with the deliberate intent to deceive, and there must have been reliance upon the misrepresentation.  *VF Corp. v. Wrexham Aviation Corp.*, 715 A.2d 188, 193 (Md. 1998).  There is no

---

[12] Any claims based on the October 20, 2009 recording of the *Henry Deed of Trust* and the quitclaim deed executed by Joseph and Billie Joe appear also to be barred by the statute of limitations, but Flagstar's motion does not raise the statute of limitations as to that recording.  *See* note 5*, supra*.

allegation that Henry's relied on any inaccuracies in the various instruments filed in 2009—neither at the time the instruments were filed nor afterwards.  That, in and of itself, justifies dismissing the claims of mortgage fraud based on the filing of the instruments.  However, for the sake of thoroughness, I will elaborate on that and other grounds requiring dismissal.

A.  The Quitclaim Deed Filed in 2009

The quitclaim deed executed by Joseph and Billie Joe regarding the Original Parcel, recorded on October 20, 2009, did not purport to relate to a mortgage; it merely conveyed Joseph's interest in the Original Parcel to Henry.  Even if the quitclaim deed could be treated as relating to one of the two deeds of trust (both of which encumbered the Additional Parcel, not the Original Parcel), no viable "mortgage fraud" has been pled as to that deed or its filing.

Henry points to (1) the quitclaim deed's purporting to convey an interest of Billie Joe in the Original Parcel when she had no interest in that property, and (2) the deed's purporting to have been prepared by Henry Zinn.  For multiple reasons, no viable mortgage fraud claim has been stated.  First, there is no allegation that Flagstar included these misstatements in the

quitclaim deed with knowledge of their falsity or with an intent to defraud.[13]

Second, any misrepresentation that the quitclaim deed was consistent with Henry's intentions occurred in 2008, incident to the refinancing loans.  That was a "misrepresentation . . . during the lending process," which might be "mortgage fraud" under § 7-401(d)(1) of the MMFPA.  However, because that misrepresentation occurred in 2008, a mortgage fraud claim based on that misrepresentation is barred by the statute of limitations.

Third, when the quitclaim deed was recorded on October 20, 2009, there was no new misstatement to Henry.  When filed in October 2009, the instrument spoke for itself and was necessarily accurate as to what was being conveyed.

Fourth, prior to October 2009, Henry was well aware that the quitclaim deed had conveyed property in a manner contrary to the intended agreement regarding the conveyance of property incident to the refinancing loans.  When the quitclaim deed was recorded in October 2009, Flagstar knew that Henry was already aware of any misrepresentation in that quitclaim deed, and it is not

_____

[13]  Henry's real complaint regarding this quitclaim deed is that there was never an intention that he become the sole owner of the Original Parcel.  However, when he became the sole owner, it is difficult to understand how that harmed him.  If there was any such harm, he could easily have undone the harm by reconveying a one-half interest in the Original Parcel to Joseph.

plausible that Flagstar was trying to deceive Henry when it recorded the deed.

Finally, in October 2009, Henry could not have relied on any misrepresentations in the quitclaim deed, as he was already aware of the falsity of the representations in the quitclaim deed. Moreover, he has not pled any reliance on misrepresentations arising from the instrument. The "mortgage fraud" claim under § 7-401(d)(6) as to the filing of the quitclaim deed executed by Joseph and Billie Joe must therefore be dismissed.

B. The *Henry Deed of Trust*

Even if Henry's allegations can be treated as establishing that Flagstar filed the *Henry Deed of Trust* or caused that document to be filed, Henry's claim based on the filing of that document must be dismissed for multiple reasons. First, the *Henry Deed of Trust* posted the wrong collateral, but the representation to Henry that the *Henry Deed of Trust* was posting the correct collateral occurred in 2008. That was a "misrepresentation . . . during the lending process," which might be "mortgage fraud" under § 7-401(d)(1) of the MMFPA. However, because that misrepresentation occurred in 2008, a mortgage fraud claim based on that misrepresentation is barred by the statute of limitations. There was no new misrepresentation made to Henry when the *Henry Deed of Trust* was recorded on October 20, 2009. It was the representation in 2008 that the instrument was posting

the correct collateral that was a misrepresentation to Henry, and a claim based thereon is time-barred.

Second, prior to October 2009, Henry was well aware that the *Henry Deed of Trust* had posted the wrong collateral. When the *Henry Deed of Trust* was recorded in October 2009, Flagstar knew that Henry was already aware of any misrepresentation in the *Henry Deed of Trust*; thus, it is implausible that Flagstar was trying to deceive Henry if it recorded the document or caused the document to be recorded.

Third, Henry could not have relied on any misrepresentations in the *Henry Deed of Trust* when it was recorded, as he was already aware of the falsity of the representations contained therein at that time. At any rate, he has not pled that he relied upon any misrepresentations in 2009. The "mortgage fraud" claim under § 7-401(d)(6) as to the filing of the *Henry Deed of Trust* must therefore be dismissed.

C.   The *Altered Henry Deed of Trust*.

Henry asserts that the *Altered Henry Deed of Trust* filed on February 2, 2012 (which added the Original Parcel as collateral as a purported correction when, in fact, it incorrectly added the entire Original Parcel as collateral) falsely represented that Henry executed the instrument. It is not plausible that there was an intent to deceive Henry in filing the *Altered Henry Deed of Trust* or that Henry relied on any misrepresentations in that

instrument as Henry was aware (and Flagstar knew that Henry was aware) that the *Henry Deed of Trust*, executed in 2008, had not posted any part of the Original Parcel as collateral, and that Henry had not intended to post the entire Original Parcel as collateral.[14] In any event, Henry has not alleged that he relied on the representations in the *Henry Deed of Trust*. The mortgage fraud claim relating to the filing of the *Altered Henry Deed of Trust* must therefore be dismissed.

      D.    The Five Instruments of Substitution of Trustees or Assignment.

Similarly, there is no allegation that Henry relied on any false representations in the instruments substituting trustees (filed on March 8, 2012, and November 19, 2012) and in the assignments (filed on March 8, 2012; November 19, 2012; and January 13, 2014). Henry was well aware of any inaccuracies in those documents by the time they were filed and Flagstar knew that Henry was aware of any inaccuracies in the documents. It is

---

[14] The *Altered Henry Deed of Trust* represents that "[t]his document is being re-recorded to correct the legal description which was incorrectly stated previously," and consists of (1) the pages of the *Henry Deed of Trust* (all bearing the recording numbers "38217 104" of the *Henry Deed of Trust*) and (2) an inserted new page (*not* bearing the recording numbers "38217 104" of the *Henry Deed of Trust*) that sets forth the legal description of the Original Parcel. The instrument bears Henry's February 27, 2008 signature, not a new signature, and by October 2008 Henry was aware that the only collateral he posted via signing the *Henry Deed of Trust* was the Additional Parcel, *not* the Original Parcel. He was well aware that he had not posted the Original Parcel as collateral.

not plausible that the instruments were filed with an intent to deceive Henry or that Henry relied on the inaccuracies contained in those instruments.  Thus, the mortgage fraud claim based on those five filings must be dismissed.

V

CLAIM BASED ON FRAUDULENT PROOF OF CLAIM

In Count IV, citing 18 U.S.C. §§ 152 and 3571, Henry seeks damages for Flagstar's filing of a proof of claim identifying the Additional Parcel as collateral for its claim.  These cited provisions of the criminal code do not provide for any type of private right of action or for an award of damages.  Nothing in the cited statutes suggests a reason to depart from the general rule that a private cause of action will not be implied with respect to "a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone." *Cort v. Ash*, 422 U.S. 66, 79–80 (1975).  No private cause of action exists under those provisions.  *See, e.g., Clayton v. Raleigh Fed. Sav. Bank*, 194 B.R. 793, 795 (M.D.N.C. 1996) (holding that 18 U.S.C. § 152(4) did not give rise to a private action).  Count IV will thus be dismissed.

VI

REAL ESTATE SETTLEMENT PROCEDURES ACT CLAIM

In Count V, Henry invokes the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, alleging

32

that Flagstar failed to make required disclosures.  However,
Henry has failed to allege any disclosures Flagstar was required
to but did not make.  Thus, Count V must be dismissed.

VII

MARYLAND CONSUMER PROTECTION ACT CLAIM

In Count VI, Henry asserts a claim against Flagstar under
the Maryland Consumer Protection Act ("MCPA"),[15] Md. Code Ann.,
Com. Law § 13-101, *et seq.*, alleging that CitiMortgage and U.S.
Bank engaged in unfair or deceptive practices, including
fraudulent concealment.  The statute, in relevant part, prohibits
engaging "in any unfair or deceptive trade practice" in the
extension of credit (§ 13-302(4)) or in the collection of
consumer debts (§ 13-303(5)).  To state a claim under the MCPA, a
plaintiff must allege that: (1) the defendant engaged in unfair
or deceptive trade practices or made one or more
misrepresentations, (2) that the plaintiff relied upon, and (3)
thus suffered actual injury.  *Boardley v. Household Finance Corp.
III*, 39 F.Supp.3d 689, 712 (D. Md. 2014).  Here, however, Henry
has not pled with sufficient particularity that Flagstar was the
entity making any misrepresentation.

Henry asserts these claims in paragraph 109 against the
original lender (Mortgage Lenders), Flagstar, and others,

_____

[15]  Henry erroneously termed this Act the Maryland Unfair or
Deceptive Trade Practices Act.

33

alleging that the defendants' "unfair or deceptive trade

practices" included:

> (a) making false and misleading oral and written statements
> and other representations which had the capacity, tendency,
> or effect of deceiving or misleading [Henry] [citing Md.
> Code Ann. Com. Law III § 13-301(1)], (b) failing to state a
> material fact if the failure deceives or tends to deceive
> [citing Md. Code Ann. Com. Law III § 13-301(3)], and (c)
> engaging in deception, fraud, false pretense, false premise,
> misrepresentation, and knowing concealment and omission of
> material facts with the intent that Henry rely thereon in
> connection with the sale of consumer services [citing Md.
> Code Ann. Com. Law III § 13-301(9)(i)].

The allegations of paragraph 109 of Count VI are all

essentially quoted statutory language and are therefore what are

considered conclusory allegations, which alone are not entitled

to be accepted by the court as true for the purposes of Rule

12(b)(6) motions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 686

(2009) ("[T]he Federal Rules do not require courts to credit a

complaint's conclusory statements without reference to its

factual context.").  Moreover, Henry failed to plead with

particularity which defendants undertook which allegedly unfair

or deceptive actions or practices.  Moreover, there is no

allegation that any of the false misrepresentations were made

with knowledge of their falsity, or that Henry relied on the

misrepresentations.  As such, Henry's MCPA claims must be

dismissed.[16]

---

[16]  For reasons discussed regarding Henry's fraud claims,
and Henry's statutory mortgage fraud claims (and as similarly
discussed in a decision of this date addressing a motion by

# VIII

## FRAUDULENT MISREPRESENTATION CLAIM

Count VII asserts a fraudulent misrepresentation claim. For the same reasons that the previous count must be dismissed, this count must be dismissed.[17]

# IX

## BREACH OF FIDUCIARY DUTY CLAIM

At a hearing on Flagstar's motion to dismiss, Henry's counsel agreed to the dismissal of Count VIII (breach of fiduciary duty). Count VIII will be dismissed.

# X

## UNJUST ENRICHMENT CLAIM

Count IX asserts an unjust enrichment claim, alleging that Flagstar and other defendants:

> had full knowledge, at all times material, that the transaction as conceived and proposed by [Mortgage Lenders] and Flagstar would create an illegal subdivision and adversely affect plaintiff's title to their property, yet 'approved' same for the benefit of [Mortgage Lenders] and their assigns including Flagstar . . . so that said defendant[] could reap profits at the expense of the plaintiff.

---

CitiMortgage and U.S. Bank to dismiss MCPA claims asserted against them by Joseph and Billie Joe), the MCPA claims against Flagstar for acts occurring in 2008 are also barred by the statute of limitations.

[17] Although Henry alleges in paragraph 115 of his complaint that the defendants represented material information with full knowledge that the representations were false, he fails to identify which of the representations were made with knowledge that they were false.

In Maryland, "[a] claim of unjust enrichment is established when: (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return." *Benson v. State*, 887 A.2d 525, 546 (Md. 2005) (citation omitted); *see also Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007). "A successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses.'" *Hill*, 936 A.2d at 352 (quoting *Dep't of Hous. & Cmty. Dev. v. Mullen*, 886 A.2d 900, 921 (Md. Ct. Spec. App. 2005), *cert. denied*, 894 A.2d 546 (2006)).

Henry does not dispute that he agreed to borrow money from Flagstar, used that refinancing loan to pay off the claim of Severn Savings Bank, and agreed to repay that refinancing loan. Flagstar's receipt and retention of payments pursuant to that loan cannot constitute unjust enrichment because it would not be the retention of "a benefit conferred by the plaintiff 'under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.'" *Bowers v.*

36

*Bank of Am., N.A.*, 905 F.Supp.2d 697, 703 (D. Md. 2012) (quoting *Hill*, 936 A.2d at 351.  It would not be unconscionable for Flagstar to retain payments to which it was contractually entitled.  *See Bowers*, 905 F.Supp.2d at 703.

Moreover, where the subject matter of the claim is governed by an express contract between the parties, a plaintiff cannot bring a viable unjust enrichment claim.  *See Janusz v. Gilliam*, 947 A.2d 560, 567 (Md. 2008) ("In Maryland, a claim of unjust enrichment, which is a quasi-contract claim, may not be brought where the subject matter of the claim is covered by an express contract between the parties." (citation and internal quotation marks omitted)).[18]

The only other possible benefit conferred upon Flagstar was the interest in the collateral for its loan.  The *Henry Deed of Trust* encumbers the Additional Parcel, and the *Altered Henry Deed of Trust* encumbers the entirety of the Original Parcel and the Additional Parcel.  Henry alleges that he never executed the *Altered Henry Deed of Trust*, so any interest in the collateral for the *Altered Henry Deed of Trust* was not a benefit that Henry conferred upon Flagstar, as required for an unjust enrichment claim to apply.  Additionally, Flagstar no longer holds the claim

---

[18]  The fuller discussion of the requirements of an unjust enrichment claim appearing in Part VI(B) of the *Memorandum Decision and Order Re Motion of U.S. Bank and CitiMortgage to Dismiss Monetary Damage Claims Asserted Against Them by Joseph and Billie Joe Zinn* of this date apply here as well.

for the refinancing loan made to Henry and no longer holds the
*Henry Deed of Trust*.  Accordingly, it is not retaining any
benefit in that regard, and unjust enrichment does not apply
regarding the *Henry Deed of Trust*.

Even if Flagstar still held both deeds of trust, Henry seeks
in Count I a declaration that the *Henry Deed of Trust* and the
*Altered Henry Deed of Trust* are invalid.  If the court declares
the deeds of trust invalid, Flagstar will not have not obtained
any interest in the Additional Parcel or in the Original Parcel.
If the liens are declared invalid, the liens will be nullities,
and nothing will have been retained by virtue of the liens.  If
the liens are declared to be valid, that necessarily will
demonstrate that there was no unjust enrichment.  Henry has not
otherwise pled any specific benefits he conferred upon Flagstar.
Thus, the unjust enrichment claim is inadequately pled as to
Flagstar and must be dismissed.

XI

BREACH OF CONTRACT CLAIM

Count X asserts a breach of contract claim, alleging in
paragraph 131 that Mortgage Lenders and Flagstar engaged in such
a breach by "(i) failing to carry out the transaction in the
manner requested by plaintiff, and in advising plaintiff to
structure the transaction in a manner that would create an
illegal subdivision in violation of the Montgomery County Zoning

Ordinance, and (ii) in other ways." Assuming the truth of Henry's allegations for purposes of this motion to dismiss, the contract was violated in 2008 when the wrong collateral was posted for the loans, quitclaim deeds were presented for execution that were contrary to Henry's agreement with the refinancing entities, and Mortgage Lenders and Flagstar failed to take steps to post the correct collateral and to facilitate correction of the quitclaim deeds. The three-year statute of limitations bars the claim as to those acts occurring in 2008.

Henry contends that the promissory note was executed under seal, making a 12-year statute of limitations apply to that note. However, the promissory note is not the contract that was breached. What was breached, and breached in 2008, was a verbal contract regarding what was to be posted as collateral for the loan.

The failure to post the correct collateral occurred in 2008. The failure persists to this day, but that does not mean that a new statute of limitations begins to run each day that the failure persists. In that light, the recording of the *Altered Henry Deed of Trust* in 2012 is not a new breach of contract. The breach of contract was the failure to post the correct collateral in 2008; that is the date from which the statute of limitations must run even though the failure has continued since that date without being cured. The later acts of filing the *Henry Deed of*

*Trust* and filing the *Altered Henry Deed of Trust* were not acts that commenced the running anew of the limitations for suing on the breach of contract claim for failure to post the correct collateral and to prepare correct quitclaim deeds.   Henry's breach of contract claim must therefore be dismissed as time-barred.

XII

THE NEGLIGENCE CLAIM

In Count XI, Henry asserts a negligence claim, alleging:

> 134.   As a result of the business relationship of the parties, defendant MLA, BTA, KEL, Flagstar had a duty prepare the loan documents and conduct the transaction in a manner that would carry out the intentions of the plaintiff in compliance with applicable laws.   In addition, at all times relevant herein defendants MLA, BTA, KEL, Flagstar, and GTS, acting as Plaintiff's lender and loan servicers, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, and to undertake reasonable actions to correct the title problems caused by MLA/BTA/KEL/Flagstar.
> 135.   Defendants MLA, BTA, KEL, and Flagstar breached their duty by negligently preparing the Quitclaim Deeds and other closing documents that resulted in the transfer of the ownership of the subject properties in a manner that was not authorized or contemplated by the plaintiff.
> 136.   Defendant MLA/BTA/KEL/Flagstar/CGD breached its duty by (i) failing to exercise reasonable care and skill to correct the negligent transfer of plaintiff's title caused by MLA/BTA/KEL/Flagstar; (ii) by pursuing foreclosure on the Henry DOT; (iii) filing the Fraudulent DOT; (iv) pursuing foreclosure on the Fraudulent DOT.

No facts have been alleged establishing a failure to maintain

accurate loan records, so any negligence claim based on such a failure must be dismissed as inadequately pled. Any breach of a verbal agreement regarding the correct collateral to post, and regarding the correct quitclaim deeds to be executed incident to the refinancing loans, was a breach of contract. "The mere negligent breach of a contract, absent a duty or obligations imposed by law independent of that arising out of the contract itself is not enough to sustain an action sounding in tort." *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961). Henry has not alleged facts establishing an independent basis for treating the breach of contract as a tort.

XIII

CIVIL CONSPIRACY CLAIM

Count XIII asserts a civil conspiracy claim. The elements of a cause of action for civil conspiracy in Maryland are "1) A confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) actual legal damage resulting to the plaintiff." *Lloyd v. General Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (citations and quotation marks omitted). In his Third Amended Complaint, referring to Cohn, Goldberg and Deutsch, LLC as "CGD" and Green Tree as "GTS," Henry alleges:

41

143. In connection with the application for and consummation of the mortgage loan the subject of this action, MLA, BTA, KEL, Flagstar, CGD, and GTS agreed, between and among themselves, to accomplish several unlawful acts (those being, through a pattern of fraudulent concealment, counseling plaintiff to engage in a transaction that would result in an illegal subdivision of his property, causing plaintiff to transfer the title of his property in a manner that was not authorized nor intended by plaintiff), filing documents in the land records known to be false, and pursuing foreclosure on instruments known to be false. Such actions were undertaken purposefully, knowingly, and maliciously.

144. As set forth above, defendants MLA, BTA, KEL, CGD, Flagstar, and GTS engaged in overt acts in furtherance of the conspiracy and to set the conspiracy in motion, and defendants Flagstar, CGD, and GTS, have engaged in acts in furtherance of the conspiracy to accomplish its ends that continue until the present time which actions have resulted in damages to the plaintiff.

145. The actions of said defendants were interrelated and could not have been accomplished without participation of all defendants.

146. As a direct and proximate result of the actions and a course of conduct of all defendants which were planned, designed, and orchestrated to further several illegal acts and to accomplish a legal act by unlawful means through the commission of several overt acts in furtherance of the conspiracy to defraud the plaintiff, plaintiff have suffered damages.

147. Defendants through and with their agents and successors defendants, agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the plaintiff.

148. The actions of said defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the plaintiff.

These allegations of engaging in a civil conspiracy are cast in conclusory terms that fail to state a claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 679 (holding that conclusory allegations "because they are no more than conclusions, are not entitled to the assumption of truth").

According to other allegations of the complaint, Cohn Goldberg & Deutsch, LLC and Green Tree (which became Flagstar's assignee after this adversary proceeding began) became involved after the filing of the quitclaim deeds and after the filing of the *Henry Deed of Trust*. There are no specific allegations regarding how those parties were involved in any agreements to cause Henry to execute those instruments. Accordingly, Henry has not adequately pled as to each wrongful act which defendants were a party to an agreement to engage in the wrongful act.

Moreover, a tort of civil conspiracy cannot stand alone. *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 665 A.2d 1038, 1045 (Md. 1995) ("Conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff[.]"). Henry has not pled a valid separate tort claim through which damages may be recovered against Flagstar. Without Count XIII having adequately identified any tortious acts of other defendants that were carried out incident to an agreement to which Flagstar was a party, no valid civil conspiracy claim has been stated. Thus, Henry's civil conspiracy claim will be dismissed.

XIV

LEAVE TO AMEND

In his opposition, Henry requested leave to amend the complaint if the court finds the complaint to be deficient. The

court will permit Henry to file a motion for leave to amend the complaint within 21 days , with the motion to attach a copy of the proposed amended complaint.

XV

CONCLUSION

An order follows dismissing the Third Amended Complaint and permitting Henry to pursue a motion for leave to amend, with the dismissal of Count I being without prejudice to obtaining a determination of the invalidity of the *Henry Deed of Trust* and the *Altered Henry Deed of Trust* incident to any valid claim for damages, including any attorney's fees recoverable as part of such damages.

[Signed and dated above.]

Copies to: E-recipients of notice of orders.